The jury in this case found in three separate counts that my client was not the shooter. They found, they acquitted him on two firearms charges, felon in possession. Well, but okay, let's sort of go from the standpoint that I think all of us that have done criminal law know that when someone's found not guilty, it doesn't mean that they're innocent. It means that it wasn't proven beyond a reasonable doubt. It's not the equivalent of a finding. You know, any finding by a jury, 12 people have to agree on, and all that they found, you know, they find that it wasn't proven in that context. And they found that it wasn't proven that he personally used a firearm. I find that very significant. They found him guilty of second-degree murder, but it's unclear under what theory. Well, I wonder on that, just from the standpoint that there's a saying that, you know, you can't have a drive-by without a driver. And it appeared that the evidence in this case was they introduced evidence to the jury that he made a statement to the police that he was the driver, that he wasn't the passenger, and that he wasn't the shooter. Then you have the person that survived the shooting identifies him as the shooter, right? And so there's a conflict. There isn't really a conflict about whether he's there in the evidence. There's a conflict about whether he was the driver or the passenger. That's correct. And under an aider and abetter theory, there's also evidence that I think that he even gives in his statement to the police that has to do with the conduct of the vehicle and going and looking for this person and going to get a gun before and all of that. So it's not even a shooting where you can claim that you were the driver and by surprise you had no idea that the passenger just pulls out a gun and decides to shoot someone. He has knowledge. He admittedly has knowledge that the shooter. And no one ever argued this probable and natural consequences. The lawyers didn't argue it, but the judge gave a rather long instruction about aiding and abetting, and that is prominently featured. The NPC doctrine is prominently featured in that instruction. The jurors are told at the beginning and the end of the case, I, the judge, will give you the law. So they say. Well, and I guess, but the theory of the case, whether it be the prosecution or the defense, which I guess even if you, you know, you can show error in the instruction, how do you show that it was, you know, it seems to me that this case was so clearly an aiding and abetting theory. How do you show that it wasn't harmless error? Well, the prosecutor argues throughout the case that my client is the shooter. The prosecutor does not argue until rebuttal, although she forcefully argues it on rebuttal, that even if, that the driver was also guilty on an aiding and abetting theory. So she gives the jury the opportunity to make either finding. And then the judge comes and instructs the jury in this ambiguous way, which everyone has conceded is an incorrect instruction under State law and under constitutional law. If the jury is not instructed on the intent that it must find, and in this case it had to find intent to commit, to aid and abet a proper target crime, a crime that murder could be considered the natural and probable consequence of, then it's a constitutional violation. Under all the cases that say if there's a missing element, the jury isn't instructed to find an element, then it's a due process violation. In this case, the jury is told that the area is a drug-ridden area, that my client is a drug dealer. They're told of his priors. They're told that gang members, by an expert witness, gang members protect their drug turf with violence, and that the statement, do you all have business around here, was a question, basically an accusation, that you're infiltrating our drug territory. So the jury is given numerous possible grounds for what would be considered possible target offenses, but none of which are identified. So the jury says that's it. I mean, I think that, I agree, but I think that instruction, even if properly given, is I don't know who can understand that instruction in the first place. But that's why I just really wonder why the jury would have even paid any attention to it when the attorneys are arguing, you know, it's clearly a drive-by shooting, and you've got a driver, and you've got a passenger, and it's a question of what it is, and everyone argues aiding and abetting, why you would even try to parse that. Well, the State court agrees with you, I guess, Your Honor, that why would the jury – that the jury probably disregarded the instruction. And speaking as a trial lawyer, I can't imagine a jury just assuming that the judge was instructing them in a bumbling way, and they should just toss away an instruction that was lengthy and complex. Was the jury instructed on second-degree murder? They had to have been, right? Oh, yes. They were instructed on it.  No. There was definite testimony that the passenger held his arm out of the window and pointed it right at the individual who testified, the victim who survived. Well, they weren't sure whether your client was the driver or whether the other fellow was the driver. That's right. They weren't sure which one was which, and if it was that one. Do you think that might explain why they opted for second-degree murder? Well, the Court can speculate as to why jurors make verdicts, but there's no basis for finding that. If we were to assume that there was a constitutional violation here, just for purposes of argument, you have to apply a Brecht analysis next. That's right. Right? Yes. And if the jurors' verdicts one thing. So tell me why I should have doubt, you know, feel uncertain about. The evidence is ambiguous. This verdict. There are many potential incorrect target offenses in the evidence here. This is not a case like some of these State cases where the only crime that's talked about is the assault, and the assault causes the death. That is clear that the assault is a proper target crime, and even though the jury wasn't instructed that, there's no other crime floating around. In this case, there are lots of other crimes being discussed that would not support, under an NPC theory, a finding of murder, a verdict. But I guess under these facts, how would the natural and probable consequences have worked? Because wouldn't... Patrolling drug territory is a crime that enforcing, you know, drug boundaries, or, you know, drug selling boundaries. Yeah, but pointing a gun at someone and shooting them, it doesn't have the, it looks like you pretty much intended to shoot them. And then the other, you know, the other guy hides and misses him, right? If you're the driver and you're driving by and somebody says, asks a question, do you all have business around here, and is pointing a gun at them, ostensibly that looks like a threat. Get out of our territory. Why ask the question if the shooter is then going to shoot? It's equally possible that it comes as a complete surprise to the driver that the passenger actually shoots. Why shoot? He's chased them away. He's terrified them. That is generally the way that these, the gang members patrol their territory. Well, I guess if someone had argued that, I think you have, I think you have a really strong argument on why that wouldn't be harmless. Because then we wouldn't know why the person was killed. But no one argued something like that. No, if the jury had found what the prosecutor primarily argued in the case, they would have found him guilty of first-degree murder, and they would have found him that he had personal use of a firearm. That's very significant that they didn't, because there's no aiding and abetting the personal use of a firearm. The individual defendant has to, under state law, actually possess that gun. There's no vicarious liability for that particular count. So that shows what the jury, at least one juror, if you're saying that all the jurors didn't agree, at least one juror did not. On the attempted murder, what, didn't they find, was that attempted premeditated murder? I believe so. Well, that doesn't help you, does it? I'm not positive. That kind of doesn't really go to the accident theory there, does it? No, that's true. But you have, in an inconsistent verdict, you have a second-degree murder of the individual who was actually killed. And again, no felon in possession, even though the jury's instructed that he has drug felony, no personal use, and one more gun charge.    drug felony, no personal use, and one more gun charge. Oh, that they find that he didn't inflict bodily injury on the victim. And how can a jury possibly have found that if he had? If you're not the shooter, you have to be the shooter to you have to. Inflict bodily injury. And then, of course, the jury's going to want to find out whether the individual  And the jury's going to want to find out whether that was premeditated, which I think they found in this instance that it was a premeditated attempted murder, right? Because there's different ones. Yeah. I actually, I think you're right, Your Honor, but we can check in the record, certainly, and find that out. Our questions have taken you down to your last 20 seconds. I think I better. You want to reserve it. We'll give you a little bit more time. Thank you. Good morning, Your Honors. Glenn Pruden, Deputy Attorney General, on behalf of the Warden. The sole issue before the Court is whether the California Court of Appeals decision that the natural and probable consequences instruction, which was erroneous only under State law, not under Federal law, but only under State law, was harmless error as they analyzed it, is an objectively unreasonable decision. The Federal collateral review of erroneous jury instructions is extremely limited because the burden of demonstrating that an erroneous jury instruction was so prejudicial. Well, why would you even give that instruction when no one even argued that theory of the case? And, I mean, it is an impossible instruction to understand, for the most part, even if correctly given. And then if no one argues it, I mean, how do we really know what counsel says is in terms of, you know, the verdicts are a little, you know, the second, don't, if, you know, the, it really, it's hard to believe why it would be a second degree if, on the one hand, you, on the, on the attempted murder, it was premeditated, and then on the other one, we find second, because first degree is premeditated, right? Yes. So, you know, they are, they're, they are a little hard to reconcile there. I would admit that it is hard to reconcile, although a very reasonable explanation is that the jury gave the defendant basically benefit of a doubt that he was actually the shooter and, and gave him a second degree murder. Well, but even if he, if, I think my point that I, you can't have a drive by without a driver and a, you know, one person's got to shoot and one person's got to drive. That's, you know, that's almost the elements of the, you know, technically the driver could shoot too, but that's not usually the way that they happen. So, and the driver's guilty, if the driver knows what the passenger is going to do, the driving makes the driver guilty of whatever the passenger did. And so it seems to me that on the theory that the case was argued, it's a first degree murder. And then it, the claim, it's a first degree murder and it's an attempted premeditated murder. But if you don't know who personally fired, then you don't find them guilty of that offense. Absolutely. But the second degree is a little. Unless the jury somehow felt that, that the, the shooter was not actually trying to, to hit the people as the district court also found in its analysis that it's, that another reasonable explanation is that. And you wouldn't find them guilty of attempted premeditated for murder. Cause that would just be scaring them and then they would get the lesser attempted. Yes, Your Honor. But however, the fact that we've got an inconsistent verdict does not raise this to a constitutional error. Well, it's awfully hard to connect the dots and come up with anything logical, except that the jury didn't buy the prosecution's argument and was struggling with some way to come up with a verdict within it. And within that, in that context, then the erroneous instruction assumes greater importance. Well, no, Your Honor, because if you look at the erroneous instruction, it does not lead the jury in any way, shape or form to speculate on the supposed lesser predicate acts that my opponent argues to you. A reasonable, the only reasonable reading of that instruction is that if you find that this case, Mr. McAdoo aided and abetted the crimes of murder or attempted murder. Well, on the natural and probable consequences, on the natural and probable consequences verdict, the error was that it doesn't list the target offense, right? I'm sorry, Your Honor. The error of the natural and probable consequences is that it didn't list the target offense. So arguably they could have come up with some target offense that wouldn't have actually qualified. But remind me on this, in that actual instruction, does it say what the person's, do they still have to, even if they went on that theory, do they still have to decide first or second degree murder? It simply says the crimes of murder and attempted murder were committed. And then it says that the second line of that instruction is that the defendant aided and abetted such crimes. Such crimes, well, the only crimes that have been talked about are the crimes of murder and attempted murder. So does that inform us at all on the first or the second degree murder? I mean, if they had gone on that theory, they still would have to decide first or second degree murder, right? Yes, Your Honor. So basically there's nothing to, what counsel, what McAdoo wants this court to believe is that we've got a runaway jury here that's just willy nilly coming up with some, some other offense that's never mentioned, never argued. And is totally contrary to this instruction, which both the state court of appeals as well as the district court have found to be basically a nullity. It brings you back to just the general aiding and abetting instruction that precedes it. Well, perhaps I'm mistaken, but I think it's awfully, I don't think I've seen a case where we've seen an aiding and abetting second degree or an attempted second degree murder. That's fairly attenuated. Well, again, Your Honor, it's, it could go to the fact that the jury was not sure whether or not Mr. McAdoo was actually the driver or the shooter, but there was certainly plenty of evidence to, to support a second degree murder. And again, it may be just the jury's way of exercising leniency in this particular situation. But the question is whether or not, it's not whether or not this Court feels that perhaps there is error. It's whether or not the court of appeal in its decision was unreasonable in coming to a contrary conclusion. We're familiar with the standard, but we've got to, you know, we still have to examine the thrust of the arguments to answer our questions. And, and I would submit that the argument that I am putting forth is not an unreasonable one, based on the facts of this case, based on the way the evidence was presented to the jury, and particularly the way it was argued to the jury. No one can explain adequately from the record that we've got why this natural improbable causes instruction was put before the jury. The court of appeal couldn't, as well as the district court, and I certainly can't explain why. Roberts, I'm sorry, I'm sorry. Just assume for a moment that there was error. Why was it harmless under Brecht? I'm sorry, Your Honor? Just assume for a moment that there was constitutional error under Boyd, and let's assume that we have to get to Brecht. Why is this just harmless under Brecht? The main reason it is harmless under Brecht, Your Honor, is that I don't think that there is any real prejudice from this instruction, because the evidence as presented to the jury certainly supports the finding of murder. It's somewhat akin to the same analysis that you would find in cases where you have a Samstrom error, and the evidence is found to show that, in fact, there is plenty of evidence to support a finding of malice, even with the erroneous instruction. There is plenty of evidence to prove beyond a reasonable doubt that there was murder and attempted murder. Well, remind me of the evidence at the trial. You've got the person that survived identifies Mr. McAdoo as the shooter, right? That's correct, Your Honor. And you have the defendant's statement to the police where he admits being the driver, knowing that the other guy has a gun. And what else does he admit in that statement? He basically says that he talks about, I believe, going back to the motel. You've got some driving conduct about the lights and how they, all of that. But now, did Mr. McAdoo testify at the trial? Don't believe he did, Your Honor. I can't remember for certain. I don't think he did. Well, I guess what I'm trying to say, if you're evaluating the evidence that's there and why it would be harmless or why it wouldn't be, was if, was there anything that distanced him from that statement that he had made to the officer? And what did his, what did his lawyer argue? His lawyer argued he wasn't the shooter. He wasn't the shooter. Did he argue he wasn't the driver? No, Your Honor. So his own lawyer argued he was the driver, but he wasn't the shooter. Did he say, you should find, did his lawyer argue he was not guilty? Or what did he argue? Well, I guess what I'm saying is, if you're going to tell us something's harmless or not harmless there, you need to know what the evidence is, right? Yes, Your Honor. Okay. And, and, well, the, the evidence showed that, that, that Mr. McAdoo went with the co-defendant to the motel to pick up the weapon. That they cruised by these individuals on several occasions. They approached them on the final time. They sit for a prolonged period at the stop sign. Okay, but what was the defense case? I'm sorry? What was the defense case at the trial? Basically, as I see the defense case, it said he was not the shooter. That he was not guilty of aiding and abetting, too? Or what was the defense case? Did the defendant, did the defendant testify? You don't know. No, I don't remember. I don't think he did, but. I don't, I, like I said, I don't think he did. I don't remember specifically. Okay. I mean, really what happened here is that the prosecution was tried on the theory that, that the defendant was the shooter. Defense gets up in closing arguments, makes, makes a pretty strong argument that he's not the shooter. And then in rebuttal, the aiding and abetting theory is trotted out, really, for the first time in front of the jury in a significant way. Isn't that true? Only trotted out. I'm not trotting, I'm sorry, but, you know, but, but, I, I guess if I was sitting at defense counsel, I'd say, wait a minute, they're changing their theory. But in rebuttal, they did. In rebuttal, the prosecutor said, well, it doesn't matter if they're the shooter or not. Even though, well, that was the theory of the prosecution. Aiding and abetting comes at the last minute. And it's clear the jury didn't, they couldn't agree that he was the shooter or possessed the gun. And, and the way that the prosecutor, at least my reading of her, her argument is that it doesn't matter whether or not he's the driver because he still had the intent to aid and abet the person who was charged in the information. That's how I read her argument, your honor. So it's, it's not an argument for aiding and abetting under the natural and probable consequences. Here's the problem, though. I mean, to get second degree murder, you have to show that the evidence is insufficient to establish deliberation and premeditation. So, the evidence in this case is, you're saying, well, they went all to deliberation and premeditation because the driver has to know it. If, if, if it's second degree murder and the shooter just pulls out a gun and, and fires, it's kind of hard to, hard to get to second degree murder for the driver on a vicarious theory. Now, there, there's simply, you would have to have implied malice, that the driver certainly was aware that the weapon was going to be fired. And maybe the intent only to shoot in the direction of the individuals to, to scare them. And that certainly is enough because it, it's, it's of the recklessness, the depraved indifference of, of shooting at some individuals who are, who are fleeing that you would come up with a second degree murder. Yeah, that wasn't argued to the jury though, right? But they were instructed on second degree murder. Right. I mean, I think this all goes to, was the jury confused by the instructions? And did they come up with something that, that was apart from the theory that both parties asserted? And I think the answer is yes. Now, whether it's constitutional error may be a different question. I, I don't think that the jury was confused by this instruction. It was simply direct them back to a straight aiding and abetting on the crimes that were charged. That's the only logical reading I can come up with on this instruction. And the other people that I've shown it to seem to agree that that's essentially how this instruction shakes out these two particular paragraphs. So I, I see my time is up, Your Honor, and I would respectfully request that you affirm the district court's decision in denying the writ. Thank you, counsel. We'll give you two minutes for rebuttal. Thank you, Your Honor. The defense in this case argued mere presence. The defense lawyer conceded my client was the driver and said if you don't find that he's the shooter, he can't be guilty because mere presence doesn't make you guilty of murder. In rebuttal, then the prosecutor got up and said, oh, but he had the gun. But that still goes back to the aiding and abetting theory, because in the aiding and abetting theory it says mere presence alone does not satisfy it, right? Right. And so then the prosecutor said even if he's a driver, he can still be guilty under aiding and abetting. And the prosecutor specifically told the jury, you can be divided on who is the shooter and still find him guilty. So and the judge also instructed them. So that also set into motion this possibility for confusion, because you could have one or several jurors who found him guilty on an NPC theory, following that instruction as best as they could. And there's so many different references to the crimes throughout that instruction, and there was so much evidence of other crimes during this trial that they could have selected. And there's a reasonable likelihood they could have selected that. And therefore, there is a substantial injurious effect on the verdict under Brecht and not a Hartmell's error. Thank you. Thank you, counsel. The case, as heard, will be submitted. Thank you both for your arguments. We'll see the next case on the oral argument calendar, which is Shire v. Ashcroft. Thank you.
judges: Thomas, Paez, Callahan